Silverstein, Appellant, *v.* Hornick.

Submitted November 19, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Irvin J. Good* and *Joseph H. Lieberman,* for appellants.

*Benjamin R. Simons,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, March 22, 1954:

Plaintiffs filed a bill in equity against Joseph Hirst and Jay Hornick, defendants, to require them as trustees under a deed of trust to pay to plaintiffs rather than to Lena Orlow, Esq., additional defendant, certain distributions thereunder. They appeal from a decree refusing them relief.

In June, 1948, Isadore Hirst, the owner of a number of theatrical businesses, discontinued gratuitous payments he previously had been making to plaintiffs, his sisters. Having obtained a divorce at about the same time, he married one Betty Palmer on June 11, 1948, while very ill. He died December 28, 1948, not having left his sickbed.

Plaintiff-Weinstein consulted with a New York attorney, who then forwarded the matter to the firm of Orlow & Orlow, of which Abram Orlow and Lena Orlow, his wife, were the partners. Both plaintiffs then engaged their services, with Abram Orlow apparently giving the matter his personal attention, although Lena Orlow was also present at consultations and was con-

sulted and dealt with after the death of Abram Orlow in April, 1950.

It was plaintiffs' purpose to obtain resumption of the gratuities and to ascertain their positions and rights in Isadore Hirst's estate, as well as in trusts which he had established. It was orally agreed that plaintiffs pay a contingent fee of 15% of all money received, and Abram Orlow thereupon sent a letter to the New York attorney, stating, inter alia: "I agreed with them . . . that we were to share in the extent of 15% for any amount recovered made in their behalf at any time hereafter." Copies of this letter were also sent to each of the plaintiffs.

Although Abram Orlow made demands upon attorneys for Isadore Hirst, no money was obtained during the lifetime of Isadore Hirst. He was equally unsuccessful in his attempts to learn the details of certain inter vivos trusts set up by Isadore Hirst.

Upon the death of Isadore Hirst six months later, it was ascertained that he had set up two inter vivos trusts. Under one of these, dated May, 1944, he had provided for Betty Palmer for life, but declared that this trust for her would terminate if she should make any claims against his estate. The other trust, dated September, 1946, provided for certain income to plaintiffs and for payments of portions of the corpus to them upon the death or resignation of the trustees.

Betty Palmer Hirst attacked the validity of the 1946 trust insofar as her standing as a widow was concerned. In turn, plaintiffs, through their attorneys, raised the question of the effect of the forfeiture clause in the 1944 trust, and also, by reason of his illness, questioned the validity of Hirst's second marriage. All of these disputes threatened the security of the businesses and the corpus of the trusts and estate, and would have reduced the value thereof from $300,000 to $150,000.

After considerable negotiation and contention between the attorneys, their claims were settled and resulted in a deed of trust, dated May 27, 1949, and executed by the various parties, wherein the various claimants were the settlors and these defendants, Hirst and Hornick, were trustees. As a result thereof, plaintiffs were given portions of the income and shares of the corpus were given to their respective legatees or heirs. The deed of trust provided that plaintiffs' payments be made to Orlow & Orlow, Esqrs. on their behalf.

Thereafter Abram Orlow received the distribution payments of plaintiffs, deducted 15% from each, and paid the balance to them. Abram Orlow having died in April, 1950, Lena Orlow, as surviving partner, continued to receive the payments for a further period of more than eight months. Plaintiffs then discharged her as their attorney and directed that all payments by defendants be made directly to them without deductions.

The court below held that there was a contingent fee contract requiring payment to Orlow & Orlow of 15% of all money received, whether before or after the death of Isadore Hirst, and that Orlows had a charging lien on all monies payable to plaintiffs under the deed of trust.

Plaintiffs contend that the proof does not establish anything beyond a contingent fee agreement as to money received in Hirst's lifetime; that since the agreement was not reduced to writing as required by Pa. R. C. P. 202, and its terms are not crystal clear, the court should have construed it against Orlow & Orlow, and there cannot be a retaining or charging lien; and that they have no standing in the equity court to recover a fee because they have no lien on the fund and have an adequate remedy at law.

" 'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles.' . . . 'Contracts must receive a reasonable interpretation, according to the intention of the parties . . . if that intention can be ascertained from their language' . . . 'in order to ascertain that intention, the court may take into consideration *the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement*' ": *Betterman v. American Stores Co.*, 367 Pa. 193, 203, 204, 80 A. 2d 66.

Application of the foregoing principles to the facts in the instant case leads to the definite conclusion that the parties formed a contingent fee contract that was to affect not only the gratuity payments but all sums received through the efforts of the attorneys. When they engaged Orlow & Orlow, plaintiffs desired and requested protection of all their rights. They continued consultations with the attorneys, and use of their services, after they knew that they could not require or obtain resumption of the gratuity payments or information regarding their status under the inter vivos trusts. They did so throughout the period of six months after Hirst's death, during which time Orlow & Orlow labored assiduously and successfully to assure them a share of the settlement. In addition, without objection they permitted receipt by Orlow & Orlow of payments from the date of the trust agreement until Abram Orlow's death in April, 1950, and by Lena Orlow thereafter until her discharge in 1951. They placed their own construction on the contingent fee agreement, to wit, that Orlow & Orlow be paid 15% of all funds received at any time.

Pa. R. C. P. 202 provides that contingent fee agreements "shall be in writing, . . . shall be subject to inspection by the Court," etc. These requirements are procedural only, and are not intended to vitiate any contract between attorney and client. Compliance therewith is highly desirable, giving the Court greater aid and assurance in determining rights of the parties in the event of dispute, particularly as to reasonableness of the fee. However, where the existence of a contract for such a fee is established, and the testimony establishes that it is reasonable, it will be upheld, even though verbal.

It must be admitted that Orlow & Orlow had no "retaining" lien. "Such a lien is dependent upon *possession* by the attorney and binds only money, papers or other property in his hands": *Harris's Appeal,* 323 Pa. 124, 128, 186 A. 92. (Italics supplied). However, they do have a "charging" lien, their services having contributed primarily to creating the fund, and there having been an agreement that the fee be paid from the fund: *Harris's Appeal,* 323 Pa. 124, 186 A. 92. "The right of an attorney to a charging lien upon a fund has been recognized by authorities generally for many years . . . Based as it is upon justice and equitable principles,[1] it is necessarily somewhat indefinite in its nature, but if the attorneys' services primarily aided in producing the fund, in fairness someone else ought not to be permitted to appropriate the fruits of their efforts, provided that by agreement with the client they are to look to the fund for compensation": *Turtle Creek Bank and Trust Company v. Murdock,* 150 Pa. Superior Ct. 277, 280, 28 A. 2d 320; allocatur refused by the Supreme Court.

---

[1] The attorney is sometimes referred to as the "equitable owner" of the fund.

The proof here was definite that Orlow & Orlow not only established the plaintiffs' rights to share, but secured those rights irrevocably under the deed of trust of May 27, 1949.

What the plaintiffs ask is that we substitute our findings for those of the chancellor, which we cannot do since they are sustained by the evidence and approved by the court en banc. Therefore there can be no denial of the attorneys' right to a charging lien. For the same reason we cannot sustain plaintiffs' contention that Orlow & Orlow had no lien on the fund because it was not in their hands.

Decree affirmed at plaintiffs' costs.