**AMERICAN INTERNATIONAL AIRWAYS, INC.**

v.

**AMERICAN INTERNATIONAL GROUP, INC.**

**Civ. A. No. 90–CV–7135.**

United States District Court, E.D. Pennsylvania.

March 22, 1993.

Ellen Rosen Rogoff, Philadelphia, PA, Robert H. Morse, Washington, DC, for plaintiff.

John W. Frazier, IV, Richard G. Placey, Betty H. Chang, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA,

Steven M. Dixon, New York City, for defendant.

## MEMORANDUM

WALDMAN, District Judge.

## I. INTRODUCTION

Plaintiff American International Airways (hereinafter "Airways") is suing defendant American International Group ("AIG") for wrongful use of civil proceedings pursuant to 42 Pa.Cons.Stat. § 8351 *et seq.*, the so-called "Dragonetti Act," following AIG's prior unsuccessful suit against Airways for trademark infringement. Jurisdiction is premised on diversity.[1]

Presently before the court is AIG's motion for summary judgment. Oral argument was held on March 3, 1993.

## II. BACKGROUND

The facts of the underlying trademark action are set out in detail in the court's opinions denying AIG's motion for a preliminary injunction, *see American International Group v. American International Airways*, 726 F.Supp. 1470 (E.D.Pa.1989), and, following a trial on the merits, denying AIG's request for a permanent injunction. *See American International Group v. American International Airways*, 1990 WL 39897 (E.D.Pa. April 4, 1990).

In summary, the court found that AIG promoted and extensively used its tradename in the insurance and financial services fields, but that it had no presence in the commercial aviation field. Indeed, while AIG owned and operated several corporate jets, it was not even licensed legally to provide commercial aviation services.[2] Airways had used the tradename "American International" in connection with commercial air transportation services since 1981. On April 18, 1985, AIG's request to register the mark "American International" with the United States Patent and Trademark Office ("PTO") in the air transportation services field was denied due to a likelihood of confusion with Airways

---

1. Airways is incorporated and has its principal place of business in Michigan. AIG is incorporated in Delaware, with its principal place of business in New York. The amount in controversy exceeds $50,000.

2. None of these aircraft displayed the "American International" name. AIG did not have a fitness certificate or an air carrier operating certificate from the Federal Aviation Administration.

which had already registered the same mark for use in that field.

The court found that the "American International" mark was essentially descriptive and that AIG had failed to prove secondary meaning in the aviation services market or a likelihood of confusion between AIG and Airways among the present and potential customers of either.[3] The court ultimately entered judgment in favor of Airways.

## III. LEGAL STANDARD

■ A motion for summary judgment requires the court to consider whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Only facts that may affect the outcome of a case under applicable law are "material." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510.

■ All reasonable inferences from the record must be drawn in favor of the non-movant. *Id.* at 255, 106 S.Ct. at 2513. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *See J.F. Feeser, Inc. v. Serv–A–Portion,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477

U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

## IV. FACTS

The pertinent facts are uncontroverted or set forth in a light most favorable to plaintiff and are as follow.

In 1984, AIG's general counsel and senior vice president, Wayland Mead, asked Roy C. Hopgood, a partner in the New York City law firm of Hopgood, Calimafde, Kalil, Blaustein & Judlowe ("the Hopgood firm"), to investigate and assess whether Airways' use of the "American International" name was actionable. AIG had used the Hopgood firm for almost fifteen years to identify potential infringers of AIG's mark and to determine what AIG's rights were in connection therewith.[4] It was not the practice of the Hopgood firm to provide AIG with written legal advice or opinions. In conducting its investigation, the Hopgood firm had unfettered access to AIG's personnel and documents.

Mr. Hopgood advised Mr. Mead that Airways was infringing AIG's "American International" mark. In a letter of October 24, 1984 to the president of Airways, Mr. Hopgood stated that Airways was infringing AIG's rights and that it intended to initiate legal action if Airways did not cease its use of the mark.

On October 26, 1988, after Airways evinced an intent to resume commercial aviation operations, AIG filed the underlying infringement suit.[5] Mr. Mead authorized the initiation of the suit after consulting with Mr. Hopgood. The two men testified that Mr. Hopgood recommended that AIG bring suit and advised that AIG had a good case. Mr. Hopgood testified that this advice was premised on his view that "American International" is a distinctive and "arbitrary" or "fanciful" mark for which proof of secondary mean-

---

**3.** *See A.J. Canfield Co. v. Honickman,* 808 F.2d 291, 296–97 (3d Cir.1986). AIG is an American based conglomerate doing business in over 100 countries around the globe. Its own witness testified that AIG's customers would be unlikely to believe that it had entered the commercial aviation field and that it was in fact quite unlikely to do so as such would be resented by some of its best customers who were competing in that field.

**4.** Mr. Hopgood testified that he and his firm no longer represent AIG.

**5.** Airways had filed for bankruptcy in the summer of 1984. Its shares and name were purchased in 1986 from the trustee by Connie Kalitta Services, Inc., a Michigan based commercial air carrier.

ing was unnecessary. Messrs. Mead and Hopgood did not expect Airways to mount a defense and doubted that the litigation would proceed past the pleading stage. On August 3, 1989, after the hearing and argument on AIG's motion for a preliminary injunction, Mr. Mead told counsel for Airways that AIG intended to pursue its claim to the Supreme Court if necessary and remarked upon the potential costs to Airways of persisting to use the contested mark.

After the court denied AIG's motion for a preliminary injunction for failure to demonstrate a reasonable probability that it would prevail on the merits, Joel Miller wrote an internal memorandum to Mr. Hopgood regarding the AIG litigation. Mr. Miller was an associate in the Hopgood firm at the time of the underlying litigation.[6] In the memorandum, Mr. Miller indicated that prior to AIG's final decision to authorize suit, "we notified Wayland Mead that we were concerned about the decrease in aviation activities." There is, however, no one with actual knowledge that the memo or expression of concern noted therein were ever conveyed to Mr. Mead. Mr. Miller testified that he had not done so, but thought that Mr. Hopgood had. Mr. Hopgood testified that he had not done so and Mr. Mead testified that he has no recollection of such a memorandum or of anyone from the Hopgood firm discussing this subject with him. Mr. Miller testified that the reference to aviation activity related to practical business considerations in deciding whether to sue and not to the legal merit of AIG's claim.

Mr. Hopgood testified that he discussed the court's initial decision with Mr. Mead and was still of the opinion that AIG had "a reasonable factual and legal basis" for its claim and that it could prevail at trial. As to use of the "American International" mark, Mr. Hopgood was of the view that "there was no reason on Earth why AIG should not have exclusive federal rights." Mr. Mead testified that he reassessed the case with counsel at each stage of the litigation before deciding to continue.

After Airways prevailed at trial, AIG retained the New York City law firm of Cahill Gordon & Reindel to review the record and advise AIG about an appeal. The attorneys who undertook this task concluded that the likelihood of success on appeal was "remote" and that AIG faced "the serious risk of turning the trial court's decision into an adverse Third Circuit decision." They so advised Mr. Mead who then directed that the notice of appeal filed on behalf of AIG two weeks earlier be withdrawn and that the litigation be terminated.

## V. DISCUSSION

To prevail on a claim of wrongful use of civil proceedings in Pennsylvania, a plaintiff has the burden of proving that the defendant procured, initiated or continued civil proceedings against it by acting:

... in a grossly negligent manner or without probable cause *and* primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

*See* 42 Pa.Cons.Stat. § 8351(a), 8354 (emphasis added).[7] There is no dispute that the prior proceeding terminated in favor of Airways.

For purposes of the Act, "probable cause" is statutorily defined, in pertinent part, as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

---

**6.** By the time of his deposition on June 30, 1992, Mr. Miller had left the Hopgood firm to practice elsewhere.

**7.** Thus, the existence of probable cause will defeat a Dragonetti Act claim even if the defendant

is shown to have acted with malice. *See Meiksin v. Howard Hanna Co.*, 404 Pa.Super. 417, 420, 590 A.2d 1303, *appeal denied*, 528 Pa. 644, 600 A.2d 196 (1991).

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law; [or,]

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; . . . .

*See* 42 Pa.Cons.Stat. § 8352. The burden is on the plaintiff to prove that "the defendant did not have probable cause for his action." *See* 42 Pa.Cons.Stat. § 8354(3).

AIG argues that only a "modicum" of evidence is required to establish probable cause and that it had probable cause to pursue the underlying suit as a matter of law. AIG cites no authority for this proposition and does not relate the factors on which it relies to what Mr. Mead, independent of counsel, reasonably believed at the pertinent time. Indeed, there is little evidence of record that Mr. Mead believed anything of significance about the validity of AIG's claim that was not premised on advice of counsel. Mr. Mead is not a trademark attorney and candidly acknowledged at his deposition that anyone who relied on him for advice in the field "would have to be crazy."

Rather, AIG appears to argue that because there was probable cause to sue, it is entitled to judgment without regard to what Mr. Mead believed, reasonably or otherwise. In arguing that it had probable cause to maintain its action, AIG points to three things.

AIG argues that because the rejection by the PTO of its 1985 registration request was based on a likelihood of confusion with Airways and not on a lack of presence in the commercial aviation field, the PTO must have concluded that AIG had a presence in the aviation market sufficient to obtain trademark protection therein. AIG contends that this provided probable cause for its suit. To the contrary, the PTO's action was inconsistent with the Hopgood theory that AIG has such a strong fanciful mark that it can prevent a subsequent use of that mark by a user in the aviation market without regard to secondary meaning, or that AIG had prior use of such a mark in the aviation services market. Indeed, the PTO rejected this pure prior use argument when it was advanced by

Mr. Hopgood in his request of October 15, 1985 for reconsideration by the PTO of its refusal to register the AIG mark in the aviation services field.

AIG next argues that instances of actual confusion between Airways and AIG demonstrate probable cause to sue. These instances virtually all involved misdirected mail, much of it from one sender. Only one instance involved confusion of a prospective air services customer. *See Berner International Corporation v. Mars Sales Company,* 987 F.2d 975, 981–82 (3d Cir.1993).

Finally, AIG argues that Airways appeared to have abandoned its right to use the contested mark. Airways' nonuse of the mark during bankruptcy technically triggered a rebuttable presumption of abandonment. *See* 15 U.S.C. § 1127(a). The critical factor, however, is a user's actual intent with regard to abandonment. *Id.; United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 138 (3d Cir.1981). In October 1987, prior to initiation of the underlying suit, the U.S. Department of Transportation had issued DOT Order No. 87–10–7 in which Airways' intention to resume operations and use of the "American International" mark were clearly noted. It is particularly difficult for AIG to sustain this argument with regard to its "continued civil proceedings" as it failed to press the abandonment contention at trial.

To the extent that AIG argues that based on the pertinent facts and applicable law, independent of advice of counsel, it was objectively reasonable to believe that it had a valid infringement claim, its argument fails.

It does not necessarily follow, however, that AIG maintained the underlying suit primarily for a purpose other than adjudicating the claim it has asserted. To sustain its burden of proving an improper purpose, Airways points to the inherent weakness of AIG's claim in tandem with Mr. Mead's expectation that Airways would not defend and his comment to Airways' counsel on August 3, 1989 which Airways characterizes as an attempt to intimidate it to give up its right to use its tradename. This evidence is rather thin, but in deciding defendant's motion the

court will assume that a jury reasonably might infer an improper motive from it.

Defendant's principal contention is that the evidence of record compels the conclusion that AIG in good faith sought and relied on advice of counsel, and thus had probable cause to pursue the underlying action as a matter of law. The testimony of Messrs. Mead and Hopgood, uncontroverted on its face, supports defendant's contention. Plaintiff argues that a jury could find that AIG failed to disclose relevant facts to counsel, or that the purported advice was so unsound and inconsistent with Mr. Mead's characterization of the AIG mark during testimony in the underlying litigation as to raise an inference that it was in fact never really given or relied upon.

Plaintiff points specifically to a market study by AIG which showed a relatively low identification of its mark with its services by prospective customers in its own service market, and the very limited nature of AIG's aviation activity. It is uncontroverted, however, that no later than July 1989, prior to the injunction hearing or trial, AIG gave its market study to the Hopgood firm. It is also uncontroverted that the Hopgood firm had free access to the AIG employees responsible for marketing and for operation of the corporate aircraft prior to initiating the underlying litigation, and that Mr. Miller interviewed them and reviewed AIG's aviation related activity prior to drafting a complaint. Correspondence the authenticity of which is not questioned shows that AIG provided the Hopgood firm with information about corporate aviation activity as early as November 1984. From its presentation of AIG's case, it is clear that litigation counsel was well aware of those AIG activities which even arguably related to aviation.

Further, the area of trademark or service mark law is relatively obtuse to a layman or one not specializing in the field. This was not an assault claim where an unsuccessful plaintiff failed to disclose to his attorney prior provocation, a breach of contract claim where an unsuccessful plaintiff failed to disclose a prior failure to perform on his part or a product liability claim where an injured plaintiff failed to disclose that he had substantially altered the product subsequent to purchase. Defendant provided counsel with all information and free access to all employees and data counsel deemed significant, and did not authorize suit until counsel expressed satisfaction. Testimony of counsel that they had all they required to render their advice is uncontroverted. Mr. Mead's colloquial reference to the AIG mark as descriptive clearly was not an expert opinion and did not connote a belief as to the appropriate legal characterization of the mark.

■ The Hopgood theory was variously that AIG used an arbitrary or fanciful mark in the relevant market prior to Airways' first use on November 18, 1981 and thus had acquired protectible rights without the need to demonstrate secondary meaning, or that the AIG mark was so fanciful and distinctive that its prior use in commerce was sufficient to defeat a claim of right by a user in a noncompeting field without proof it had acquired secondary meaning in that field. This theory was unsound. AIG's aviation activities were very limited and it had no presence, prior or subsequent to Airways' use of the mark in question, in the commercial air services market. The name "American International" is essentially a descriptive mark which is preemptive only upon a showing that it has acquired secondary meaning in the alleged infringer's market. *See Interpace Corporation v. Lapp, Inc.*, 721 F.2d 460, 465 (3d Cir.1983).[8]

In reversing a grant of summary judgment against AIG, the Court in *American Intern. Group v. American Intern. Bank*, 926 F.2d 829 (9th Cir.1991) found that although "'American International' is inherently a weak mark," there was a material factual question of whether there was sufficient public identification of the mark with AIG's financial services business to create a likelihood of confusion as to the source of the

---

**8.** Unless a user's mark has sufficient strength or has acquired sufficient meaning or recognition among potential consumers in the relevant market, there is, of course, no likelihood that they could be confused about whether that user was the source of a particular product or service. *See Interpace,* 721 F.2d at 462.

"complementary or related" banking services provided by defendant. *Id.* at 832. In his opinion dissenting on the issue of laches, Judge Kozinski forcefully notes that "there are few terms more generic than American; it describes someone or something originating in the United States. International is an equally descriptive word, suggesting a connection with foreign trade or commerce. Nor does it take much creativity to juxtapose the two ... dozens of businesses across the country use American International as part of their name." *Id.* at 834. *See also American Intern. Group, Inc. v. London American Intern.,* 664 F.2d 348, 351–52 (2d Cir.1981) (reversing summary judgment against AIG upon finding of factual question of whether its mark had acquired "secondary meaning" in the international financial services market).

Mr. Mead testified in the underlying litigation that to him the name American International "implies that we do business in America and on an international basis." Counsel for AIG in the underlying litigation could cite no case in which a court had found the AIG mark to be distinctive or "arbitrary" and counsel for AIG in the instant litigation acknowledged at oral argument that he is aware of no such case.

█ There is no requirement under the Dragonetti Act, however, that counsel's advice be sound. As counsel for plaintiff acknowledged, at least where an unsuccessful litigant has acted in consultation with an attorney, the legislature has made it quite difficult, presumably intentionally so, for the successful defendant to prevail on a wrongful use of civil proceedings claim in Pennsylvania. The only reasonable conclusion from the record adduced is that AIG throughout the underlying litigation in good faith sought and relied upon legal advice of counsel after disclosing or providing free access to all information deemed by counsel and perceived by AIG to be pertinent. When the Hopgood firm advised Mr. Mead that AIG had a meritorious claim, he authorized the initiation and prosecution of the underlying litigation. When the Cahill firm advised Mr. Mead that AIG did not have a meritorious appeal, he directed that AIG's notice of appeal be withdrawn and that the underlying litigation be terminated.

On the record before it, the court concludes that defendant is entitled to judgment and an appropriate order will be entered.

## ORDER

AND NOW, this 22nd day of March, 1993, upon consideration of defendant's Motion for Summary Judgment and plaintiff's response thereto, following oral argument thereon and consistent with the accompanying memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED and JUDGMENT is ENTERED in the above-captioned case for the defendant and against the plaintiff.