## Kit v. Mitchell

C.P. of Delaware County, no. 96-12477.

*J. Michael Farrell,* for plaintiff.
*Gary A. Hurwitz* and *Ronald A. Katcher,* for defendants.

McGOVERN JR., *J.,* March 3, 2000—Plaintiff, Michael A. Kit, appeals from this court's entry of a judgment n.o.v. in favor of defendants.

This legal malpractice action arose from plaintiff's contention that defendant, in representing plaintiff's wife, pursued a support action which eventually caused the plaintiff to be arrested while defendant knew that a blood test had been taken demonstrating that plaintiff was not the father of the child for whom support was being paid. Plaintiff's ex-wife had since married the biological father of the child in question. Plaintiff's ex-wife, her present husband, and her father all claimed that plaintiff had been told before and shortly after conception of the child that he was not the father. Plaintiff contends that

he did not learn of a blood test until an evaluator was appointed in a pending custody matter for the child in question. The history of the relationship between plaintiff and his ex-wife is as tortuous as the history of the instant matter.

Plaintiff and his ex-wife (who now is Mrs. Patricia Devine) met in 1978 and were married in 1982. (7/30/98 N.T. 101; 7/31/98 N.T. 270.) Although the parties had difficulties with conceiving a child, presumably because of plaintiff's low sperm count, plaintiff's ex-wife became pregnant in 1985. (7/30/98 N.T. 102; 7/31/98 N.T. 271.) The couple was living together as husband and wife at the time of conception, during the pregnancy, and at the child's birth in March 1986. Plaintiff was noted as the child's father on the birth certificate. (7/30/98 N.T. 106-107.) Plaintiff and his ex-wife were experiencing marital difficulties even before the birth of their child and his ex-wife testified that she advised plaintiff even before birth that he was likely not the child's father. (7/31/98 N.T. 23.) Plaintiff admits that his wife told him the child was not his, but contends this was after the birth. (7/31/98 N.T. 24-26, 271-72.) Plaintiff's ex-wife, Ms. Devine, and her paramour, now her husband, obtained blood tests on January 7, 1987 of themselves and the child, and the results indicated a 99.077 percent probability that plaintiff's ex-wife's paramour and plaintiff's ex-wife were the parents of the child. That report is dated February 2, 1987. (Exhibit P-3; 7/30/98 N.T. 110-14.) Plaintiff's ex-wife filed for divorce in February 1987. (7/30/98 N.T. 115, 116-21; 7/31/98 N.T. 31, 190-91.) At that point, the parties could not agree to terms for equitable distribution, and plaintiff's ex-wife filed a support action against him. The dispute between the parties included resolving the distribution of their two pieces of

real estate and plaintiff's ex-wife, now Ms. Devine, wanted plaintiff to relinquish his rights to the child. (7/30/98 N.T. 117-18; 7/31/98 N.T. 43-44.) An order for support was entered pursuant to an agreement February 11, 1987. (7/30/98 N.T. 121-22; 7/31/98 N.T. 276.) Plaintiff saw the child regularly by virtue of an informal custody agreement, although the child stayed with Ms. Devine until the latter terminated these visitations, advising plaintiff that he was not the child's father. (7/30/98 N.T. 123-24, 161-62; 7/31/98 N.T. 276.) Plaintiff then stopped making support payments. (7/30/98 N.T. 123-24.) The child was supported by Ms. Devine's paramour who eventually married Ms. Devine.

Plaintiff, in August 1987, filed a petition to vacate the support order and requested blood tests to determine paternity of the child. Plaintiff, in his petition, alleged that "sometime after the entering of this order [on April 10, 1987], petitioner realized he was not the natural father . . ." of the child. (7/30/98 N.T. 126-27; 7/31/98 N.T. 47, 277-78; exhibit P-11, paragraph 5.) (date inserted) Plaintiff also alleged in that petition that he was sterile at the time of conception and admitted that his ex-wife had told him he was not the natural father of the child. (Exhibit P-11.) Ms. Devine had given a copy of the blood test she had taken with her child and her paramour to her then attorney, not the present defendant, who advised that because of the presumption of paternity, that blood test report was irrelevant. (7/30/98 N.T. 129, 137.)[1] There was considerable testimony that plaintiff had been per-

---

1. The record is clear that the blood tests plaintiff sought were solely of the parties to that action, which included himself. Even though plaintiff claims ignorance of the 1987 test, and although this evidence was never mentioned by any court in the various lawsuits involving this matter, it may have been a significant factor in the jury's determination that the defendants were not liable for fraud in the case at bar.

sonally shown copies of the 1987 blood tests. (See for example, 7/30/98 N.T. 138-39; 7/31/98 N.T. 34-36, 224-25.) Plaintiff, however, denies receiving any information concerning the existence of the 1987 blood tests until 1993, when he was advised by a court-appointed custody evaluator. (7/31/98 N.T. 279.)

The domestic relations dispute between these parties continued around the same issues, including the issue of paternity. When a master, appointed pursuant to plaintiff's petition to vacate, recommended blood tests be conducted, Ms. Devine, who had, at that point, been representing herself, retained defendant. (7/30/98 N.T. 135-43; 7/31/98 N.T. 51.) The defendant undertook representation of Patricia Devine as concerns her divorce, custody and support matters on December 13, 1988, and continued that representation through April of 1996.[2]

Ms. Devine had retained an attorney, other than the defendant, to handle a criminal matter arising from this divorce action and she provided him with a copy of the 1987 blood test report. (7/30/98 N.T. 145-46.) Ms. Devine obtained her file from that attorney and delivered it to the defendant, and claims that at some subsequent point, she saw that report in the defendant's hands. (7/30/98 N.T. 145-48, 151; 7/31/98 N.T. 59-60.) Ms. Devine also testified that she had never seen the defendant with that blood test report and that he had never reviewed it with her. (7/31/98 N.T. 104-109.) She apparently assumed that it was in the file. The defendant contended that he not only had never seen the blood test report, but was unaware of it until the 1992 custody action. The paternity

---

2. When Ms. Devine initially retained defendant, Richard A. Mitchell, Esquire, he was in the employ of the law firm Cramp, D'Iorio, McConchie and Forbes, but in November of 1990, he became a member of the firm March, Hurwitz, DeMarco & Mitchell.

issue continued to be a bargaining chip used in the negotiations between these parties. (7/30/98 N.T. 74-75, 103-106, 107-108, 139, 151-52, 159-60, 184-86, 188-89, 190-91, 200, 218-19, 222, 224, 235-37, 239-40, 245-46, 248-49; 7/31/98 N.T. 39, 95-96, 123-24, 157, 200-202, 273-75, 280, 282, 284; exhibits P-45, D-15, D-17.)

Defendant contends that he had never seen the blood test report until after the custody evaluator's hearing in 1993. Defendant took the position that plaintiff's petition for blood tests should be opposed because it was his understanding of the law at the time, consistent with other attorneys Ms. Devine had consulted, that since plaintiff and Ms. Devine were the household into which the child was born, held themselves out to be the parents, and the plaintiff's name was noted on the birth certificate as father, the presumption of paternity compelled a conclusion that plaintiff was the father and, therefore, responsible for the child's support. Therefore, any new blood tests would be irrelevant. (7/31/98 N.T. 200-203; exhibit D-13.) Thus, defendant continued the support litigation and also sought to obtain medical coverage for the child. (7/31/98 N.T. 203.)

A de novo hearing pursuant to plaintiff's petition to vacate the support order was held before another judge on January 26, 1989. The 1987 blood test report was not introduced because of the presumption of paternity. That de novo hearing resulted in an opinion and order dated June 19, 1989 denying plaintiff's petition to vacate. (Exhibit P-10.) Plaintiff appealed. That court's order was affirmed by way of an unpublished memorandum opinion from the Pennsylvania Superior Court dated March 30, 1990. See *Kit v. Kit,* 400 Pa. Super. 630, 576 A.2d 1143 (1990) (table). The Superior Court's opinion was not entered into evidence, but held, as did the lower court,

that since plaintiff clearly had reason to question paternity prior to entry of this order and because he failed to appeal from entry of the support order, the issue of the child's paternity was established as a matter of law. *Kit v. Kit, supra,* unpublished memorandum opinion, 1941 Philadelphia 1989, p. 2. Neither court found fraud. The plaintiff was foreclosed from challenging paternity. *Wachter v. Ascero,* 379 Pa. Super. 618, 621, 550 A.2d 1019, 1020 (1988).

Defendant, who entered into representation some *two years after* the support order, pursued enforcement of that order, part of which included filing a petition for contempt on behalf of Ms. Devine on March 17, 1989. It was as a result of that contempt that on June 28, 1990, during a routine county sweep for "deadbeat dads," plaintiff was arrested. During this entire period of time, negotiations for a property settlement and child custody continued. Plaintiff's admitted failure to pay support resulted in an entry of judgment in the amount of $9,145 on December 18, 1989 as arrearages had been certified at that figure on September 12, 1989. (Exhibit P-33.)

Plaintiff and Ms. Devine were divorced by court decree September 13, 1990. (Exhibit P-37.) Plaintiff, in November of 1990, filed a petition to obtain partial custody of the minor child. (7/30/98 N.T. 191.) Ms. Devine and her present husband had resided together from June 1987, and Mr. Devine had provided support for the child since February 1987, and expressed an intent to adopt. (7/30/98 N.T. 165-78.) Mr. and Ms. Devine were married February 8, 1991. (7/30/98 N.T. 100.) Testimony was received from a new lawyer representing plaintiff, basically confirming what has already been stated. (7/30/98 N.T. 217-55; 7/31/98 N.T. 116-82.) This lawyer, of course, testified from the perspective of representing

the plaintiff during that period of time. Plaintiff and Ms. Devine arrived at an equitable distribution settlement in September 1992. (Exhibit P-45.)

The defendant has been a practitioner specializing in family law for "essentially 29 years." (8/3/98 N.T. 33.) The defendant denied ever having a copy of the 1987 blood test results, and stated they were not in the file transferred to him by Ms. Devine, from another attorney who handled a criminal matter for Ms. Devine. Defendant contended he was first advised that Mr. and Ms. Devine had a blood test, in a telephone conversation with Mr. Devine on January 31, 1992. (8/3/98 N.T. 41, 61-62, 84-85, 111, 145-46.) Defendant was aware that the prior attorney testified that when he released Ms. Devine's file on August 9, 1994, it contained a copy of the 1987 blood test report. (8/3/98 N.T. 112.) Although defendant had been advised by Ms. Devine that the plaintiff was not the biological father of the child, the defendant believed the issue to be resolved because plaintiff had voluntarily agreed to the entry of a support order long before the defendant undertook representation of Ms. Devine. (8/3/98 N.T. 41-42.) Defendant believed that "the state of the law at the time was that once a father during a marriage had a child and they lived together, and he held the child out to be his child and thereafter entered into a support order, acknowledging paternity and started paying, that was the end of the issue." (8/3/98 N.T. 41-42.) Such was a correct statement of the law at that time. *Seger v. Seger,* 377 Pa. Super. 391, 547 A.2d 424 (1988). Defendant testified that he first received a report of the 1987 blood test results from the custody evaluator in 1993. (8/3/98 N.T. 76.) Defendant also testified that he recommended that Ms. Devine accept a $1,000 offer from the plaintiff's sister after the plaintiff was arrested, and thus allow the plaintiff to be released from jail, but Ms. Devine

refused to do so. (8/3/98 N.T. 116-17.) Custody, visitation and paternity continued to be part of the overall negotiations for a settlement of all issues related to their divorce. (See *e.g.,* 8/3/98 N.T. 118-19, 121-23, 126.)

An evaluator was appointed by the court on July 29, 1991 pursuant to the custody action between plaintiff and Ms. Devine. A second evaluator was appointed October 27, 1992. It was in the course of this second evaluation that Mr. Devine, on his own, delivered a copy of the 1987 blood test report to the evaluator. This was against the advice of both plaintiff's attorney and the defendant, as well. That report was not shared with the parties until June 1993. (7/30/98 N.T. 196-97.) Indeed, defendant recommended blood testing of Mr. and Ms. Devine and the child on August 17, 1992. (7/30/98 N.T. 195-96; 7/31/98 N.T. 61-62; exhibit D-38.)

Plaintiff then filed another petition to vacate the support order and a request for blood studies of the parties. Pursuant to a stipulation, those tests were conducted in October of 1993. The November 16, 1993 report therefrom excluded plaintiff as the father of this child. The support order was then vacated and plaintiff's parental rights concerning the child were terminated.

Plaintiff then sought refund of all support monies, counsel fees and a sum that had been granted to Ms. Devine as part of the parties' equitable distribution settlement. The court directed Ms. Devine to pay $26,025 to plaintiff and found that Ms. Devine had perpetrated a fraud in concealing the results of the 1987 blood tests from the plaintiff at the time the original support order was entered.[3]

---

3. The lower court opinion was not admitted as a trial exhibit. However, the Pennsylvania Superior Court opinion in that matter is admitted as exhibit P-1.

Plaintiff then filed the above-captioned matter upon the theory of fraud, wrongful use of civil proceedings, and improper certification of pleadings against the defendant, as well as his law firms. The plaintiff sued the law firms, in addition, upon the theory of negligent hiring and supervision of the defendant. The defense, in addition to denying any basis for recovery, contended that the plaintiff's action was beyond the applicable statute of limitations. The theory of negligent hiring and supervision was withdrawn at the outset of trial.

Plaintiff's theory in its simplest terms was that defendant knew of the 1987 blood test report and yet proceeded to enforce the support order against plaintiff and filed the petition for contempt, which ultimately resulted in the plaintiff's incarceration. Defendant's position, again in its simplest terms, was that defendant did not have, or know of, the 1987 blood test report at the relevant times here. When he did discover the existence of that report, he acted appropriately and that, in any event, when he entered into representation of Ms. Devine, the law of presumption of paternity and the Pennsylvania Superior Court opinion made that report irrelevant to the matters for which he was retained. The defendants also contended the matter was initiated after the statute of limitations had expired. Plaintiff claimed punitive damages. However, the court declined to instruct the jury concerning such, and plaintiff did not object thereto. (8/3/98 N.T. 207.) Nor is that an issue in the instant appeal. The other claims by plaintiff were resolved. (8/3/98 N.T. 221-31; 7/31/98 N.T. 4.) This matter proceeded to trial upon plaintiff's theory of fraud and wrongful use of civil proceedings. A jury, on August 4, 1998, found that the plaintiff had instituted this lawsuit within the statute of limitations (presumably applying the "discovery rule"), and

that the defendant was not liable for fraud. The jury found in favor of the plaintiff, finding that the defendant wrongfully used civil proceedings, and that such was a substantial factor in bringing about harm to the plaintiff while defendant was in the employ of both law firms. The jury awarded plaintiff $100,000.[4] Following post-verdict motions, judgment n.o.v. was granted and this appeal was filed.

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(b)

Plaintiff, pursuant to this court's order, submitted an unnumbered 43-page document purportedly pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), which, except for a brief preamble, is identical to the written argument submitted in response to defendants' post-trial motions. The first two pages of this document are entitled "Plaintiff's objection to defendants' bill of costs."

Such a response can hardly be termed a "concise" statement of matters complained of on appeal and is clearly in violation of the spirit, as well as the letter, of the aforesaid appellate rule of procedure. This court is thereby placed in the position that failure to identify a particular issue may result in reversal. Particularly challenging is the reality that many of these paragraphs contain more than one issue. This court, therefore, in an effort to be fair, will attempt to address plaintiff's issues as the court understands them to be from the summary headings beginning upon page 20 of plaintiff's statement. Plaintiff, in sum, contends that this court erred in entering a judg-

---

4. Plaintiff's counsel agreed to the submission of this case to the jury solely upon the theories of fraud and wrongful use of civil proceedings. (8/4/98 N.T. 57-60.)

ment n.o.v. and argues that the evidence was sufficient for the jury to find wrongful use of civil proceedings, that the evidence showed defendant did continue civil proceedings which terminated in the plaintiff's favor and that defendant could not claim probable cause for undertaking that course of action; that the matter was filed within the applicable statute of limitations; and that defendants were not entitled to relief.

It is clear that this court granted judgment n.o.v. and not a new trial and, therefore, any issues relating to a new trial are irrelevant and need not be pursued in this opinion, even though plaintiff attempts to raise such issues in his filing.[5] This court has serious doubts about this jury's finding that this suit was filed within the applicable statute of limitations, since plaintiff testified that he began to suspect that defendant might have the 1987 blood test report at the time of the trial resulting from plaintiff's second petition to vacate, which was during 1995. Such would render the matter within the discovery rule if plaintiff's ignorance thereof was reasonable.

While this court can and does disagree with the jury's finding in that regard, it is *not* entitled to grant judgment n.o.v. on that basis, nor did it. The fundamental issue then before this court was to determine, considering the evidence in a light most favorable to plaintiff, the verdict winner, whether or not even that view of the evi-

---

5. Plaintiff argues that defendants could not obtain judgment n.o.v. on "any theory advanced." However, there is no argument as to law or fact set forth in the brief responding to defendants' post-trial motions, contradicting the jury's verdict on the fraud count, and any further contention in that regard should be deemed waived. *Nimick v. Shuty,* 440 Pa. Super. 87, 100, 655 A.2d 132, 138 (1995); *Smith v. Penbridge Associates Inc.,* 440 Pa. Super. 410, 427 n.12, 655 A.2d 1015, 1024 n.12 (1995); *Gallagher v. Sheridan,* 445 Pa. Super. 266, 665 A.2d 485 (1995).

dence afforded a basis to support this jury's verdict. Plaintiff's use of boilerplate language in response to defendants' brief submitted pursuant to their post-verdict motions as concerns liability for gross negligence in the matter involving wrongful use of civil process (otherwise known as the Dragonetti case) clearly indicates that plaintiff's appeal is based on his belief that the evidence supports a finding that defendant pursued the support matters in question against the plaintiff without probable cause and for an improper purpose. (See plaintiff's statement of matters complained of on appeal, unnumbered page 2.) Plaintiff made no effort to address defendants' contention that the verdicts were hopelessly inconsistent and that the verdict concerning the wrongful use of civil proceedings could not stand in face of the jury's decision that there was no fraud.[6]

## JUDGMENT N.O.V.

Judgment n.o.v. may be entered only in a clear case where the evidence is insufficient to sustain a verdict. *Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970). This relief may never be used so as to invade the province of the jury, particularly where the jury's determination is based partly upon questions of conflicting testimony and the credibility of witnesses. *Brandon v. Peoples Natural Gas Co.,* 417 Pa. 128, 207 A.2d 843 (1965);

---

6. Pursuant to plaintiff's request, this court instructed the jury concerning abuse of process and wrongful use of civil proceedings. The verdict slip, however, which was approved by plaintiff prior to submission to the jury, included only an inquiry as to wrongful use of civil proceedings. Therefore, any claim of error as regards the verdict slip or the court's instruction must be deemed waived. Pennsylvania Rule of Civil Procedure 227.1; *Frank v. Peckich,* 257 Pa. Super. 561, 391 A.2d 624 (1978); *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

*Axilbund v. McAllister,* 407 Pa. 46, 180 A.2d 244 (1962); *Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 138-39, 153 A.2d 477, 479-80 (1959). Where the trial questions were determined by a trier of fact, and if there is reasonable support for the trier's verdict, judgment n.o.v. will not be granted because the weight of the evidence, including credibility, is a matter for the jury alone. *Farmers' Northern Market Co. v. Gallagher,* 392 Pa. 221, 139 A.2d 908 (1958).

Judgment n.o.v. is an extreme remedy to be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds-Cadillac-GMC,* 413 Pa. Super. 308, 605 A.2d 373 (1992). It is for the court to determine whether there was sufficient competent evidence to sustain the verdict granting the winner of the verdict the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inferences to be drawn therefrom. *Wenrick v. Schloemann-Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989); *Spagnol Enterprises Inc. v. Digital Equipment Corp.,* 390 Pa. Super. 372, 568 A.2d 948 (1989); *Robertson v. Atlantic Richfield Petroleum Company,* 371 Pa. Super. 49, 537 A.2d 814 (1987), *alloc. denied,* 520 Pa. 590, 551 A.2d 216 (1988); *Thomas v. Allegheny & Easter Coal Co.,* 309 Pa. Super. 333, 455 A.2d 637 (1982).

## SUFFICIENCY OF THE EVIDENCE

There is no dispute concerning defendant's continuation of the proceedings for the purpose of enforcing the support order against plaintiff. There is no dispute that a court ordered that the amount of support paid by plaintiff be returned to plaintiff because plaintiff was not the child's father.

The issues thus remaining in the case at bar are: one, whether the defendant had probable cause for his action; two, whether the purpose for the proceedings was other than "securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based"; and three, whether the plaintiff was caused harm. 42 Pa.C.S. §8354. Plaintiff, of course, had the burden of proving those issues.[7] The evidence, as has been seen, evinces that plaintiff's ex-wife, now Ms. Devine, filed a support action against plaintiff in 1987. Defendant undertook representation in December 1988, and that action was finally concluded by order of court in October 1994 in plaintiff's favor. It is clear that the defendant, not having entered his appearance or undertaken any representation, cannot be responsible for the entry of the support order against plaintiff. Defendant's representation was some two years after the initial support order. It is equally clear that defendant continued the proceedings seeking to enforce that support order. Defendant cannot be held responsible for any fraud attached to the obtaining of that court order by Ms. Devine. Plaintiff agrees. (7/31/98 N.T. 321-22.)

It was, and continues to be, plaintiff's theory that defendant's fraudulent nondisclosure of the blood test results demonstrates that defendant did not have, and could not have, probable cause for his actions. "Therein lies the rub." This jury found that no fraud was committed by the defendant and, therefore, perforce, defendant's nondisclosure could not have been fraudulent in the case at bar. Therefore, the jury's verdict that the support litigation was pursued without probable cause clearly con-

---

7. Although plaintiff sought punitive damages initially, the court advised the parties that it did not believe such was appropriate to be submitted to the jury. Plaintiff raises no objection thereto on appeal.

tradicts its conclusion that the defendant was *not* liable for fraud related to his purported knowledge of the 1987 blood test results. The verdict was inconsistent and repugnant to the interests of justice. Fraud requires a finding that defendant made a misrepresentation that he knew to be untrue, or did not believe to be true, or was indifferent as to its truth or falsity, or by reason of some special circumstance, had a duty to know whether it was true.[8] The actual representation by the defendant was not false because he represented that a support order existed and was in place, and it is that order that he was enforcing. That was clearly in accordance with the facts. Although greatly disputed, in light of the jury's verdict, one must conclude that the defendant knew of the 1987 blood test results, and one must presume further that the defendant knew the law, including its presumption of paternity. This jury was instructed extensively as regards fraudulent misrepresentation or nondisclosure. (8/4/98 N.T. 39-46.)[9] It is, therefore, fair to conclude that this jury, in returning its verdict in favor of the defendant on the issue of fraudulent nondisclosure of the 1987 blood test results, concluded that plaintiff failed to meet his burden of proof and demonstrate:

(1) That defendant failed to exercise reasonable care with regard to disclosing the existence of the 1987 blood test results at or after the time this information may have come into his possession;

(2) That defendant's words or conduct, alleged not to be in accord with the applicable facts, intentionally were

---

8. See Pennsylvania Standard Jury Instruction 13.14 and subcommittee note thereto appended.

9. Although plaintiff's attorney at sidebar requested the court expand its jury instructions, the court declined, and no claim of error was made then or now. (8/4/98 N.T. 49.)

designed to mislead the plaintiff as to the existence of the blood test report;

(3) That the 1987 blood test report was material, *i.e.,* would have been of importance to a reasonable person's consideration in making a decision in the support action;

(4) That failure to disclose the 1987 blood test report was done with knowledge that plaintiff was likely to regard it as important, even though a reasonable person would not regard it as important;

(5) That plaintiff relied upon the misrepresentation or misleading representation, as to the 1987 blood test report, as true, and that plaintiff would not have acted as he did unless he considered that misrepresentation or misleading representation to be true;[10]

(6) That defendant knew he was making or subsequently learned he had made a misleading representation, and knew or subsequently learned that the plaintiff was about to act in reliance upon it;

(7) That defendant had adopted or participated in the fraudulent actions, misrepresentation or nondisclosure of his client, the plaintiff's former wife, knowing them to be fraudulent or misrepresentative;

(8) That plaintiff had suffered a loss as a consequence of defendant's misrepresentation or misleading representation regarding the 1987 blood test results.

Plaintiff's "Dragonetti" action rested upon the same contentions and evidence as was presented in an effort to establish fraud. There has been no challenge by plaintiff to the jury's conclusion that there was no fraud. And,

---

10. Note that when defendant knew of the 1987 blood test results, even according to plaintiff's position, plaintiff had already agreed to the support order. Defendant made no representation relating to the support order itself.

although no relief in that regard could be effective other than a new trial, and thus such is not within the perimeter of plaintiff's appeal from the grant of judgment n.o.v., there appears no basis in this record to dismiss that finding of "no fraud." Therefore, if there is, as a matter of jury verdict, no fraud in this case, then plaintiff's contention in his "Dragonetti" action which is founded upon the same fraud with regard to the same blood test results, that defendant lacked probable cause to pursue his actions, collapses. *Broadwater v. Sentner,* 725 A.2d 779 (Pa. Super. 1999). The Superior Court there confirmed that a showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense to a cause of malicious prosecution which renders immaterial the issue of whether the prosecutor's motive is malicious. See also, *American International Airways Inc. v. American International Group Inc.,* 816 F. Supp. 1058 (E.D. Pa. 1993). This jury was extensively instructed concerning plaintiff's "Dragonetti" action. (8/4/98 N.T. 26-35.)

It was never plaintiff's theory that defendant was grossly negligent in not disclosing the existence of the 1987 blood test report, but rather that defendant intentionally refused to disclose that report. It is plaintiff's theory that defendant acted not recklessly, but purposefully to inflict the contended harm. Such is, of course, not gross negligence, but rather an allegation that there was no probable cause for defendant's action. Plaintiff took exception to the court's charge concerning probable cause. (8/4/98 N.T. 50-51.) However, that instruction (found at 8/4/98 N.T. 30) is in accordance with Pennsylvania law. See *Broadwater v. Sentner, supra.* Plaintiff pursued the matter no further in his post-trial motions, brief or statement of issues raised on appeal. Therefore,

any issues concerning the trial court's instructions as to probable cause have been waived pursuant to Pennsylvania Rule of Civil Procedure 227.1(b)(2); *Frank v. Peckich, supra.*

This jury's verdict against the defendant for wrongful use of civil proceedings must rest upon findings that:

(1) Defendant acted in a grossly negligent manner in the initiation, continuation, or procurement of civil proceedings against the plaintiff or without probable cause to do so, and primarily for a purpose other than of securing proper discovery or adjudication of the support claim and in the enforcement of a valid court order.

(2) That the civil proceedings in question terminated in favor of the plaintiff.

(3) That, even if defendant had acted in a grossly negligent manner or without probable cause, the defendant did not act primarily for the purpose of securing proper discovery or adjudication of the support action.

(4) That the defendant either did not have a reasonable belief in the existence of the facts upon which the support claim was based, or did not have a reasonable belief that under those facts the claim may have been valid under the then existing law, or the developing law, or did not have a belief as an attorney of record in good faith that his procurement or initiation or continuation of the civil cause was not intended to merely harass or injure the plaintiff and thus did not act with probable cause.

(5) That defendant had a duty to turn over material not requested by the plaintiff.

A plaintiff in such matters must prove that the underlying proceedings were terminated in his favor; that defendant caused those proceedings to be instituted or continued without probable cause; and that the proceedings

were instituted for an improper purpose. 42 Pa.C.S. §8351; Restatement (Second) of Torts §674; *Hart v. O'Malley,* 436 Pa. Super. 151, 160-61, 647 A.2d 542, 547 (1994), *aff'd,* 544 Pa. 315, 676 A.2d 222 (1996); *Bannar v. Miller,* 701 A.2d 242, 247 (Pa. Super. 1997). The "Dragonetti" statute provides: "a person who takes part in the . . . initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of facts upon which the claim is based and either:

"Reasonably believes that under those facts the claim may be valid under the existing or developing law; . . . [or]

"Believes as an attorney of record, in good faith, that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party." 42 Pa.C.S. §8352. (bracket inserted)

It has already been seen that the finding of no fraud and the verdict against defendants under the "Dragonetti Act" are inconsistent and cannot stand together. Since plaintiff has never challenged the jury's verdict in favor of defendants as to the count of fraud, and since plaintiff has never raised an exception to the verdict on the grounds of inconsistency, those matters have been waived. *McDermott v. Biddle,* 436 Pa. Super. 94, 113-14, 647 A.2d 514, 523-24 (1994). The lack of fraud can mean nothing other than defendant had a reasonable belief, under the facts, that the claim was valid under the existing law, and as attorney of record that he acted in good faith in initiating or continuing the support cause of action, believing it was not to harass or maliciously injure plaintiff. The defendant, in short, had probable cause pursuant to the statute and, as has been observed, plaintiff never pursued a theory of gross negligence.

The Pennsylvania Superior Court in the case of *Meiksin v. Howard Hanna Co. Inc.,* 404 Pa. Super. 417, 590 A.2d 1303 (1991), *alloc. denied,* 528 Pa. 644, 600 A.2d 196 (1991), adopted comment d of the Restatement (Second) of Torts §674, holding that:

"An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action (see section 675); and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (See section 676.) An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

"If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person." *Meiksin v. Howard Hanna Co. Inc.,* 404 Pa. Super. at 420-21, 590 A.2d at 1305.

There is no serious dispute concerning the law applicable at the time of defendant's representation of Ms. Devine. The 1987 blood test results were inadmissible in any legal proceeding involving the plaintiff's paternity of the child until there was a judicial decision finding that Ms. Devine acted fraudulently at the time the original support order was entered. *Strauser v. Stahr,* 556

Pa. 83, 726 A.2d 1052 (1999); *Amrhein v. Cozad,* 714 A.2d 409 (Pa. Super. 1998); *Ruth F. v. Robert B.,* 456 Pa. Super. 398, 690 A.2d 1171 (1997); *Kohler v. Bleem,* 439 Pa. Super. 385, 654 A.2d 569 (1995); *Seger v. Seger, supra.*

A court decision in that regard did not exist until April 10, 1996, when a court ruled against Ms. Devine. It is important to remember, however, that that court did not rule against the defendant. It is clear, in Pennsylvania, that: "a child conceived or born during the marriage is presumed to be the child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception. However, the presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage." *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997). (footnote omitted)

Neither of the exceptions set forth by the Pennsylvania Supreme Court are present in the case at bar. The Pennsylvania Superior Court has held that the principle estopping a husband from denying paternity where he has accepted his wife's child and held it out as his own is embedded in Pennsylvania law and emerged in the case of *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa. Super. 274, 184 A.2d 351 (1962); *Kohler v. Bleem,* 439 Pa. Super. 385, 654 A.2d 569 (1995).

A common pleas court had held that plaintiff failed to timely seek to rebut the presumption of paternity, and even the knowledge of low sperm count or other reasons were not a basis to set aside the presumption. That court

noted that plaintiff signed and agreed to the entry of an order of support, and never appealed from that order. That court's determination, as has been seen, was upheld by the Pennsylvania Superior Court and plaintiff was collaterally estopped from relitigating the issue of paternity based on established precedent in the law. *Sanders v. Sanders,* 384 Pa. Super. 311, 558 A.2d 556 (1989), *appeal denied,* 525 Pa. 635, 578 A.2d 930 (1990). Therefore, neither plaintiff nor defendant, representing Ms. Devine, could have presented the 1987 blood test report as in any way relevant to the issue of paternity until fraud on the part of Ms. Devine was judicially determined. Therefore, defendant's pursuit of this matter in behalf of his client was based upon existing well-established law. Further, no new blood tests will be ordered until there is a determination that a child born to a married couple living together at the time of conception and birth is not a child of the marriage. Only then will a blood test be ordered on a third party. *Jones v. Trojak,* 535 Pa. 95, 634 A.2d 201 (1993); *Brinkley v. King, supra.* Therefore, a presumptive father such as plaintiff is estopped from challenging paternity where there is no evidence that he had no access to the mother at the time of conception or was incapable of fathering the child. Neither exception was even inferred by any evidence presented throughout the tortuous history of this support litigation. Plaintiff would also have been estopped from challenging paternity of the child where the evidence established that he accepted the child by holding it out as his own, as he himself testified that he did during this proceeding. Defendant, representing the child's mother, was in no better position as regards estoppel. The issue simply was legally closed until the court ruling of April 10, 1996, finding Ms. Devine had fraudulently obtained the initial support order.

The jury, in the case at bar, may have concluded that pursuit of the support order was improperly used to procure a settlement of the divorce litigation and property distribution. However, since this jury found that the defendant was free from fraud, the only reasonable inference then must be that the defendant reasonably believed the cause and action to be valid, particularly in light of the law concerning the presumption of paternity. It certainly is widespread and solid practice to endeavor to conclude all of the issues raised in a domestic relations matter at the same time. Therefore, a conclusion by the jury that the evidence was sufficient to prove that the defendant continued the proceedings against the plaintiff without probable cause must be in error. Such a result is consistent with the Pennsylvania Superior Court holdings in *Bannar v. Miller, supra; Meiksin v. Howard Hanna Co. Inc., supra.* The Pennsylvania Superior Court in *Bannar v. Miller, supra,* affirmed this court's refusal to reverse a jury's verdict against an attorney, holding that:

"Although probable cause is properly determined by the court when there are no material conflicts in the evidence, the existence of probable cause in this particular case was a mixed question of fact and law and was therefore properly submitted to the jury." *Bannar v. Miller, supra,* 701 A.2d at 248.

The question in the case at bar is purely a question of the law (the presumption of paternity and collateral estoppel) about which there was no dispute or disagreement in the evidence. It cannot be said that disputed matters of law should be submitted to the jury. Defendant has a duty to follow that law in the representation of his client. How can he be at fault so long as he does so without fraud? There is not only a jury's verdict that there

is no fraud in the case at bar, but also there is no evidentiary dispute about what the law was as it applied here, nor about the conduct of plaintiff as relates to the child, nor about any of the relevant dates. The verdict is simply fatally inconsistent and repugnant to justice.

Plaintiff has not effectively argued and established his claim that defendants were grossly negligent in the Dragonetti matter, and, in any event, gross negligence would be incongruent with this jury's determination in favor of the defendant as to fraud. As has hereinabove been observed, plaintiff's contention throughout was not that the defendant negligently, or even with gross negligence, overlooked or failed to disclose the 1987 blood test report, but rather that the defendant intentionally acted to withhold it. The jury's finding of no fraud allows for the conclusion that the defendant had a reasonable belief in the validity of Ms. Devine's cause against the plaintiff. Whether defendant's motive was proper or not becomes irrelevant because plaintiff failed to establish the "probable cause" element of his Dragonetti action. 42 Pa.C.S. §8351; Restatement (Second) of Torts §674; *Hart v. O'Malley, supra; Bannar v. Miller, supra.* Plaintiff has never disputed throughout this litigation that the gravamen of his case against defendant was the commission of a fraud upon the plaintiff. (See 8/3/98 N.T. 26-29.)

This court could find no Pennsylvania authority directing that jury's verdict be set aside as to wrongful use of civil proceedings because it is inconsistent with a jury's verdict finding no fraud. Plaintiff has offered neither criticism nor exception to the entire verdict, either before or after it was certified. Nor has he addressed this issue in post-trial litigation. The issue, if raised on appeal, should, therefore, be deemed waived pursuant to Pennsylvania

Rule of Civil Procedure 227.1; *Frank v. Peckich, supra.* Instructive, however, is the opinion from the Third District Court of Appeals in Florida in the matter of *Travelers Express Inc. v. Acosta,* 397 So.2d 733 (1981), wherein the court was considering whether to hear a plaintiff's malicious prosecution claim, together with the defendant's claim for conversion, breach of trust and conspiracy to defraud. The court observed:

"A verdict for Myriam [Acosta] on her claim of malicious prosecution, whether tried separately or together, coupled with a verdict in favor of Travelers on its counterclaims, would produce repugnant, inconsistent verdicts. For example, a verdict for Myriam on her claim of malicious prosecution requires establishment of all elements of the tort, one of which is the absence of probable cause . . .; while a verdict for Travelers on its counterclaims would necessarily establish the probable cause which was found to be absent in a verdict for Myriam on her malicious prosecution claim." *Travelers Express Inc. v. Acosta,* 397 So.2d 733 at 738. (citations omitted; brackets supplied)

Consistent with that reasoning, from the Court of Civil Appeals of Alabama, is the reasoning in *City of Gadsden v. Lawder,* 718 So.2d 707 (1997), that such a verdict would not be inconsistent if supported by different evidence for each course of action. However, plaintiff, in the lawsuit at bar, alleges fraud because of misrepresentation or misleading representation in the nondisclosure of the 1987 blood test results. Plaintiff, in his "Dragonetti" action, alleges a lack of probable cause because defendant wrongfully concealed knowledge of the existence of those blood test results from plaintiff while prosecuting the support action against him. Here, then, the evidence presented by plaintiff to support fraud and the evi-

dence presented by plaintiff to support wrongful use of civil proceedings was identical. Therefore, again, the jury's verdict, finding no fraud, is inconsistent with the jury's determination that defendant lacked probable cause to pursue the civil proceedings against plaintiff. Those inconsistent verdicts cannot stand.

Although a jury's verdict must not be the product of passion, prejudice, partiality, or corruption, and must bear some reasonable relation to the loss suffered by plaintiff as demonstrated by uncontroverted evidence presented at trial, this jury could very well have been subjected to passion or prejudice by the defendant's pursuit of his client's requests in the support and domestic relations actions. *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995); *Slaseman v. Myers,* 309 Pa. Super. 537, 541, 455 A.2d 1213, 1215 (1983). This jury's finding that the defendant had no probable cause to pursue this action, while finding that there was no fraud, could very well be evidence of such prejudice.[11]

It is for all the foregoing reasons that defendant had probable cause to pursue enforcement of the support order on behalf of Ms. Devine, plaintiff's ex-wife, and that

---

11. It is recognized that an action based on fraud must be proven by clear and convincing evidence, whereas generally an action founded upon wrongful use of civil proceedings is required to be shown by a preponderance of the evidence. Where the allegation in the latter theory includes fraudulent conduct, however, that conduct must be established by clear and convincing evidence. *Fort Washington Resources Inc. v. Tanner,* 858 F. Supp. 455 (E.D. Pa. 1994). Thus, there exists a clear conflict in the verdict which cannot be resolved by different burdens of proof. The jury could not have found that fraud was not proven by clear and convincing evidence and yet still have found that there was wrongful use of civil proceedings involving the fraudulent nondisclosure of the 1987 blood test results. Moreover, there is no claim for negligent misrepresentation in this lawsuit. *Woodward v. Dietrich,* 378 Pa. Super. 111, 548 A.2d 301 (1988).

plaintiff failed to meet his burden of proof requisite for the showing of defendant's liability for wrongful use of civil proceedings. 42 Pa.C.S. §8351; Restatement (Second) of Torts §674; *Hart v. O'Malley, supra; Meiksin v. Howard Hanna Co. Inc., supra; Bannar v. Miller, supra.*[12]

---

12. Plaintiff, during the trial, requested an instruction concerning the abuse of process. (8/3/98 N.T. 240.) That is a tort distinguished from wrongful use of civil proceedings. Plaintiff has never raised this issue or argued it, and, therefore, it is now deemed to be waived. Pennsylvania Rule of Civil Procedure 227.1(b); *Frank v. Peckich, supra.*

The court, however, did instruct this jury concerning abuse of process, but was of the opinion that the tort of abuse of process was subsumed into a Dragonetti action under the circumstances of this case. (8/3/98 N.T. 241-44.) This was a correct statement of the law. *Al Hamilton Contracting Company v. Cowder,* 434 Pa. Super. 491, 644 A.2d 188 (1994). The court did instruct the jury concerning abuse of process. (8/4/98 N.T. 6-7, 37-39.) The gravamen of an abuse of process tort theory is to avoid process being used to achieve an illegitimate end to the proceedings. Here, the proceedings were the payment of support monies and, therefore, not an illegitimate end. The only other possibility would be to find that these proceedings were used as "legal blackmail" to obtain a property settlement if that were found to be completely unrelated to the cause of action sued upon. Such could not be found under the circumstances of this case. *Al Hamilton Contracting Company v. Cowder, supra; Ken J. Pezrow Corp. v. Karabasz,* 1995 WL 91439 (E.D. Pa. 1995). Plaintiff raised no exception to the court's instructions in this regard. When the verdict slip was sent to the jury, it contained no separate interrogatory concerning abuse of process, but rather simply inquired of the jury as to wrongful use of civil proceedings and fraud, inter alia. Plaintiff took no exception to the verdict slip as submitted. (8/4/98 N.T. 48-54.)

The jury, during deliberations, returned, seeking a definition of "civil proceedings." (8/4/98 N.T. 65.) The court instructed the jury accordingly. The jury indicated it was satisfied with the answer and retired to continue deliberations. (8/4/98 N.T. 71-72.) The plaintiff raised no objection to those instructions. The verdict was returned and without any further exception or objection and it was certified. (8/4/98 N.T. 76-78.) Defendant's actions proceeded toward the enforcement of a legally entered and binding support order according to the law and sought to obtain not only the payment of the support pursuant to that

# CONCLUSION

This court has, therefore, concluded that the jury's findings that the defendant committed no fraud on the same evidence which was intended to support a cause of action for wrongful use of civil proceedings is fatally flawed and, therefore, the finding against defendant upon the latter must be set aside by judgment n.o.v. Plaintiff has failed to meet his burden of showing by separate and distinct evidence the absence of probable cause for bringing the underlying action by the defendant. Plaintiff has never even addressed the issue of conflicting verdicts in any argument, objection, exception or brief. Plaintiff has failed to address issues upon which he had an arguable chance of prevailing. Plaintiff failed to meet his evidentiary burden of establishing a lack of probable cause underlying defendant's action in pursuing the support order's enforcement, nor has plaintiff shown any improper purpose of the defendant's action.[13]

---

order, but at the same time was seeking to obtain a settlement of all the outstanding domestic relations issues.

There is nothing unrelated or illegitimate about those ends. The jury found that there was no fraud in defendant's actions and, therefore, as hereinabove seen, could not have found a lack of probable cause based on that fraud. This jury may have been confused by the abuse of process instructions given at the plaintiff's behest and simply included their findings as to that tort, which was not requested from them, and contrary to the instructions from the court, labeled that as wrongful use of civil proceedings. The jury's verdict in any case was flawed and plaintiff has never objected to the court's instructions or verdict slip as regards these issues. Plaintiff's failure to seek correction at the time constitutes a waiver of any claim that would seek to uphold a finding of abuse of process.

13. By requesting an instruction on abuse of process, and then later agreeing to a jury interrogatory setting forth a question only as to wrongful use of civil proceedings, plaintiff has participated in instigating the possible confusion by this jury. (This is simply offered as a possible rationale for such a conflicting verdict.)

It is recognized that the order of this court may be affirmed if it is correct upon any legal ground, and it is respectfully suggested that the court's disposition was correct. *Al Hamilton Contracting Co. v. Cowder,* 434 Pa. Super. 491, 644 A.2d 188 (1994); *Turnway Corp. v. Soffer,* 461 Pa. 447, 462, 336 A.2d 871, 878 (1975).

It is respectfully submitted, for all the foregoing reasons, that the court's grant of defendants' motion for judgment n.o.v. was properly founded in the evidence in the law, and accords with justice.

