J-S61033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SANDRA E. AMBELIOTIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NICHOLAS M. AMBELIOTIS, | : | |
| | : | |
| APPEAL OF: BUNDE, GILLOTTI, | : | |
| MULROY & SCHULTZ, P.C. | : | No. 229 WDA 2016 |

Appeal from the Order January 22, 2016
in the Court of Common Pleas of Allegheny County,
Family Court Division, No(s): FD 13-003823-008

BEFORE: PANELLA, LAZARUS and MUSMANNO JJ.

MEMORANDUM BY MUSMANNO, J.:             **FILED AUGUST 31, 2016**

Bunde, Gillotti, Mulroy & Shultz, P.C. ("BGMS") appeals from the Order granting Sandra E. Ambeliotis's ("Ambeliotis") Petition to Establish Payment Plan on Charging Lien.[1]  We affirm.

In March 2013, Ambeliotis retained Hilary Bendik ("Bendik"), an attorney for BGMS, to represent her during divorce proceedings.  Ambeliotis paid an initial retainer of $3,500 and signed an engagement agreement with BGMS, which included BGMS's right to assert a charging lien for any unpaid fees against any fund Ambeliotis received as a result of the firm's work.  Ambeliotis initially made regular payments for BGMS's services.  Once the regular payments stopped, Ambeliotis assured BGMS she would pay the

---

[1] BGMS purports to appeal from the denial of its Motion for Reconsideration.  It is well-settled that "an appeal will not lie from the denial of a motion for reconsideration." **Karschner v. Karschner**, 703 A.2d 61, 62 (Pa. Super. 1997).  However, BGMS's appeal was filed within 30 days of the January 22, 2016 Order granting Ambeliotis's Petition.  Thus, we will address the appeal.

fees. As a result, BGMS continued to represent her. At the time of the equitable distribution trial in February 2015, Ambeliotis owed approximately $60,000 in fees.

Following the equitable distribution trial, the Master released her Report and Recommendation on May 18, 2015. According to the Master's Report, the marital estate would be divided 55/45 in Ambeliotis's favor. However, due to limited liquid assets available for distribution, the Master recommended Ambeliotis receive her equitable distribution award through 84 monthly payments of $1,858.89. Additionally, Ambeliotis was to receive $1,200 per month for 24 months, as rehabilitative alimony payments. Thereafter, Ambeliotis and her ex-husband filed Exceptions.

In June 2015, Bendik left BGMS, and Ambeliotis transferred her case with Bendik. Bendik argued Ambeliotis's case on Exceptions, including an argument for the equitable distribution to be allowed in one lump sum. On November 15, 2015, after the Exceptions case was heard, the trial court ordered the equitable distribution award to be paid through 84 monthly payments of $2,283.15.[2]

While the Exceptions were still pending, BGMS filed a Petition to Establish a Charging Lien. BGMS was seeking to recover Ambeliotis's unpaid balance for the services provided while Bendik was working at BGMS. In the

---

[2] The trial court retained the 55/45 split in Ambeliotis's favor. **See** Order, 11/15/15, at 1 (unnumbered); **see also** Trial Court Opinion, 4/6/16, at 2 n.1. The updated monthly distribution was higher due to some omitted assets. **See** Trial Court Opinion, 4/6/16, at 2 n.1.

October 21, 2015 Order, the trial court issued a charging lien against Ambeliotis in the amount of $63,601.45. Any funds from an equitable distribution award were to be placed in escrow "pending further agreement of the parties or Order of Court." Order, 10/21/15, at 2.

On January 22, 2016, Ambeliotis filed a Petition to Establish Payment Plan on Charging Lien. Ambeliotis notified the trial court that she and BGMS were unable to come to an agreement on how the charging lien should be paid. On the same day, the trial court issued an Order for Ambeliotis to make monthly payments of $1,200 to satisfy the charging lien. The trial court directed Ambeliotis's ex-husband to pay $1,200 of the monthly equitable distribution award to BGMS, leaving Ambeliotis with $1,083.15 per month from the award.[3]

Thereafter, BGMS filed a Motion to Reconsider, which the trial court denied. BGMS filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, BGMS presents five questions for our review:

1. Did the trial court commit an error of law and abuse its discretion in modifying the terms of an Order of Court entered on October 21, 2015[,] for which no motion for reconsideration or appeal had been filed?

2. Did the trial court commit an error of law and abuse its discretion in acting outside of its authority and interfering with contractual obligations entered into by BGMS and their prior client?

---

[3] It appears the trial court incorrectly stated that Ambeliotis would only receive $1,038.15 after the payment to BGMS.

- 3 -

3. Did the trial court commit an error of law and abuse its discretion in deferring payments that were due BGMS consistent with an attorney charging lien?

4. Did the trial court commit an error of law and abuse its discretion in failing to follow established Pennsylvania law relating to attorney charging liens?

5. Did the trial court commit an error of law, act outside of its authority and abuse its discretion in entering an Order of Court essentially modifying the terms of a fee agreement between BGMS and their former client?

Brief for Appellant at 4 (issues renumbered for ease of disposition).

Initially, courts must consider five factors before issuing a charging lien:

(1) [] there is a fund in court or otherwise applicable for distribution on equitable principles, (2) [] the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) [] it was agreed that counsel look to the fund rather than the client for his compensation, (4) [] the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) [] there are equitable considerations which necessitate the recognition and application of the charging lien.

***Shenango Sys. Solutions, Inc. v. Micros-Systems, Inc.***, 887 A.2d 772, 774 (Pa. Super. 2005) (quoting ***Recht v. Urban Redevelopment Auth.***, 168 A.2d 134, 138-39 (Pa. 1961)).

In BGMS's first claim, it contends that the trial court abused its discretion in modifying the terms of the October 21, 2015 Order. ***See*** Brief for Appellant at 10-11. BGMS claims that because the Order granting the Petition to Establish Payment Plan was filed three months after the Order

granting the charging lien, the trial court acted outside of its jurisdiction under 42 Pa.C.S.A. § 5505.[4] *Id.*

In its October 21, 2015 Order, the trial court stated that any funds Ambeliotis received through equitable distribution were to go into an escrow account "pending further agreement of the parties or Order of Court." Order, 10/21/15, at 1-2. The trial court noted that the January 22, 2016 Order granting of the payment plan "did not modify the October 21, 2015 Order at all; it was contemplated by it." Trial Court Opinion, 4/6/16, at 5.

Here, the trial court granted the charging lien against Ambeliotis while the Exceptions on the equitable distribution were still being decided. Due to the language of the original Order, and the fact that pertinent terms of the equitable distribution award were still being determined at the time the charging lien was issued, the October 21, 2015 Order was not a final order. *See* Pa.R.A.P. 341(b)(1) (noting that a final order disposes of all claims and parties); *see also G.B. v. M.M.B.*, 670 A.2d 714, 717 (Pa. Super. 1996) (stating that an order is final if it resolves all pending issues and constitutes a complete disposition of the claims). Rather, the potential for further judicial action was contemplated, and the trial court acted within its

---

[4] Section 5505 states that "[e]xcept as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505.

- 5 -

jurisdiction once such action was necessitated. Thus, BGMS's first claim is without merit.

In its second claim, BGMS contends that the trial court went beyond its subject matter jurisdiction by interfering with the contractual obligations of the fee agreement between BGMS and Ambeliotis. *See* Brief for Appellant at 12-14. In its third claim, BGMS argues that the trial court abused its discretion by effectively deferring payments. *Id.* at 17-18.

"Whether a court has subject matter jurisdiction presents a question of law, making our standard of review *de novo* and the scope of our review plenary." *Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa. Super. 2015).

In its Opinion, the trial court addressed BGMS's claims and determined they are without merit. *See* Trial Court Opinion, 4/6/16, at 6-8. Because the foundation of the Petition to Establish Charging Lien was the language of the fee agreement, it was within the trial court's jurisdiction, and necessary after failed payment negotiations, to examine the language of this fee agreement and determine a reasonable interpretation under which to enforce the charging lien. Further, notwithstanding the longer payment schedule, the decision to grant the established payment plan does not jeopardize BGMS's interest in full payment of the unpaid fees. Thus, we adopt the sound reasoning of the trial court for the purpose of this appeal. *See* Trial Court Opinion, 4/6/16, at 9-10.

In BGMS's fourth claim, it avers that the trial court abused its discretion by failing to follow Pennsylvania law relating to charging liens. *See* Brief for Appellant at 15-16. BGMS asserts that the charging lien must be satisfied before Ambeliotis is to receive any portion of the equitable distribution award. *Id.*

The trial court addressed BGMS's fourth claim and determined that it is without merit. *See* Trial Court Opinion, 4/6/16, at 8-9; *see also* 23 Pa.C.S.A. § 3323(f) (stating that the trial court may act with "full equity power and jurisdiction[,] and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause."); *Shenango*, 887 A.2d at 774 (stating that a trial court may account for equitable considerations regarding the issuance of the charging lien). We affirm with regard to this issue based on the trial court's sound rationale. *See* Trial Court Opinion, 4/6/16, at 8-9.

In its fifth claim, BGMS argues that the trial court acted outside its authority by modifying the fee agreement. *See* Brief for Appellant at 19-20.

The trial court addressed BGMS's claim and determined it is without merit, and we incorporate such rationale herein. *See* Trial Court Opinion, 4/6/16, at 9-10. The fee agreement's purpose of ensuring full compensation for services provided by BGMS was not modified. Thus, the trial court's analysis of the fee agreement was reasonable, and we adopt its sound

- 7 -

reasoning for the purpose of this appeal. **See** Trial Court Opinion, 4/6/16, at 9-10.

Based on the foregoing, the trial court acted within its jurisdiction, and did not abuse its discretion. Thus, we affirm the Order granting the payment plan.[5]

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016

---

[5] Additionally, Ambeliotis seeks enforcement of an arbitration clause in the fee agreement, and she requests an award of attorney's fees related to this appeal based on a frivolous appeal or vexatious conduct. **See** Brief for Appellee at 8-9; **see also** Pa.R.A.P. 2744; Fee Agreement, 3/5/13, at 3-4. However, Ambeliotis filed the Petition to Establish Payment Plan in the Court of Common Pleas, and did not seek the assistance of the Allegheny County Bar Association's Special Fee Dispute Committee when BGMS would not negotiate a reasonable payment plan. **See Stanley-Laman Group v. Hyldahl**, 939 A.2d 378, 382-83 (Pa. Super. 2007) (stating that "[a] party's acceptance of the regular channels of the judicial process can demonstrate its waiver of arbitration."); **see also Smay v. E.R. Stuebner, Inc.**, 864 A.2d 1266, 1278 (Pa. Super. 2004) (stating that acceptance of the judicial process includes a party's failure to raise the arbitration issue promptly). Thus, Ambeliotis's arbitration claim is waived. Further, the appeal was not frivolous as it was reasonable for BGMS to appeal any decision through the judiciary. Accordingly, Ambeliotis is not entitled to attorney's fees.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Sandra E. Ambeliotis,

                Plaintiff,

    v.

Nicholas M. Ambeliotis,

                Defendant,

No.: FD- 13-003823
Superior Court No.: 229WDA 2016

OPINION

April 6, 2016                                   Judge Cathleen Bubash

The law firm of Bunde Gillotti Mulroy & Schultz, (hereinafter "BGMS") which represented Plaintiff, Sandra E. Ambeliotis (hereinafter "Wife") in her divorce action, appeals my January 22, 2016 Order regarding a charging lien. In that Order, I established a payment plan under which Wife would satisfy her obligation to BGMS under the lien. For the reasons set forth below, my Order should be affirmed.

## Background

In March of 2013, Wife retained BGMS attorney Hilary Bendik to represent her in a divorce action, paying an initial $3,500.00 retainer. The engagement agreement between Wife and BGMS set forth the rights and obligations of each, including BGMS's right to assert a charging lien for unpaid fees against any fund received by Wife as a result of the firm's efforts.

Initially, Wife made regular payments during the course of BGMS's representation. Those regular payments then stopped. Wife asserted she intended to pay and BGMS continued its representation. By the time of the equitable distribution trial, Wife owed close to $60,000.00 in fees to BGMS.

1

The equitable distribution case was heard by a special master in February of 2015. In her May 18, 2015 Report and Recommendation, the Master divided the marital estate 55/45 in Wife's favor. Although the parties had built a successful business during their marriage, most of the substantial marital assets were encumbered by substantial marital liabilities. Due to the scant liquid assets available for distribution, and in order not to negatively affect the viability of the marital business, the Master recommended that Husband pay Wife $1,858.89 per month for 84 months until she received $156,146.65 to complete the 55/45 distribution scheme. She further recommended Wife receive $1200.00 in monthly rehabilitative alimony payments for 24 months. Both parties filed exceptions.

In June of 2015, just after the trial, attorney Bendik left BGMS, taking Wife's case with her to her new firm. Bendik argued Wife's case on exceptions. While I would have preferred to provide Wife with a lump sum from the marital estate, I found, as did the Master, that doing so was essentially impossible because of the way the parties had leveraged their assets. Accordingly, it was necessary for Wife to receive her portion of equitable distribution over time. My November 15, 2015 Order partially sustaining Wife's exceptions provided, *inter alia*, that Husband pay Wife $161,537.00, with interest, at the rate of $2283.15 per month for 84 months to accomplish the equitable distribution award. [1]

After my Order on exceptions, BGMS filed a Petition to Establish a Charging Lien to recoup their unpaid fees. I granted BGMS's petition for a lien by Order of October 21, 2015, which reads as follows:

"1.    A charging lien is issued against Sandra E. Ambeliotis, and all assets which she is entitled to pursuant to her rights and claims for equitable distribution. The charging lien issued hereby is issued in favor of the Law Firm of Bunde Gillotti Mulroy & Schultz, PC in the amount of $63,601.45 pending further Order of Court.

---

[1] I retained the 55/45 distribution scheme, added in some inadvertently omitted assets, affirmed the award of alimony, and ordered Husband to refinance the marital home. None of these aspects of the underlying ruling are relevant to the instant appeal.

2

2.    Any funds payable to Wife as a result of any equitable distribution award shall be placed into an escrow account at Dollar Bank with counsel from Bunde Gillotti Mulroy & Schultz, PC and counsel or Sandra E. Ambeliotis serving as escrow agents.

3.    Escrow shall be maintained pending further agreement of the parties or Order of Court."

On January 22, 2016, Wife, through attorney Bendik, filed a Petition to Establish Payment Plan on Charging Lien, asking that I enter a further Order of Court, establishing a payment plan because the parties could not reach agreement on how she should pay BGMS out of the monthly payments from Husband. Wife proposed monthly payments of $1200.00 per month, which would result in full payment of the $63,601.45 in 3.7 years.[2] Wife represented, and BGMS did not dispute, that the firm was unwilling to take any payment plan, and was, instead, requiring the entire $2,283.00 received monthly by Wife be held in escrow. This would leave Wife with only her $1,200.00 monthly alimony as income.

On January 22, 2016, despite extremely vigorous argument from BGMS, I entered an Order for Wife to make monthly payments of $1,200.00 to satisfy the charging lien. That Order reads as follows:

"...It is hereby ordered adjudged and decreed that BGMS to be repaid under the charging lien at the rate of $1200.00/month until paid in full, with $1038.15 paid directly to Wife. Husband shall direct the $1200.00 per month to {BGMS} until they have been repaid the $63,401.45 under the charging lien. BGMS shall promptly notify counsel for Husband and counsel for Wife once the balance has been paid in full."

BGMS promptly filed a Motion for Reconsideration which I denied on February 2, 2016. On February 12, 2016, BGMS appealed, making good on a promise made repeatedly during its very animated argument on the Motion for Reconsideration. In response to my 1925(b) Order, the firm timely filed its

---

[2] BGMS had received $10,000.00 directly from Husband

3

Concise Statement of Matters Complained of on Appeal, which states, in relevant part, as follows:

"a.    The trial court committed an error of law and abused its discretion in modifying the terms of an Order entered on October 21, 2015 for which no motion for reconsideration or appeal had been filed.

b.    The trial court committed an error of law and abused its discretion in acting outside of its authority and interfering with contractual obligations entered into by BGMS and their prior client.

c.    The trial court committed an error of law and abused its discretion in failing to follow established Pennsylvania law relating to attorney charging liens.

d.    The trial court committed an error of law and abused its discretion in deferring payments that were due BGMS consistent with an attorney charging lien.

e.    The trial court committed an error of law, acted outside of its authority, and abused its discretion in entering an Order of Court essentially modifying the terms of a fee agreement between BGMS and their former client."

## Discussion

Initially, I note that I found it appropriate to issue a charging lien in favor of BGMS in this matter. Under the law, five conditions must be met before a charging lien is recognized and applied:  1. There must be a fund applicable for distribution on equitable principles; 2. services of the attorney must have operated substantially or primarily to secure the fund; 3. It was agreed that counsel look to the fund rather than the client for compensation; 4. the lien is limited to fees incurred in the litigation by which the fund was raised; and 5. There are other equitable considerations which necessitate recognition of the lien. *See*, *Shenango Systems Solutions, Inc. v Micros-Systems, Inc.*, 887 A.2d 772 (Pa.Super. 2006).

I found the Agreement between BGMS and Wife clearly established that BGMS could look to what fund it created for payment of its fees. I found Wife's equitable distribution award was secured through BGMS's efforts in the litigation

4

5a

for which she retained them. I also found that, since Wife was no longer a client of BGMS, it was equitable that a lien be established.

The fact remains, however, that the "fund" which BGMS established for Wife was to be paid out to her slowly over a number of years. I, accordingly, found it equitable and reasonable that the amounts of that fund subject to the charging lien would also have to be paid out to BGMS in installments.

My October 21, 2015 Order establishing the lien provided the funds payable to Wife in equitable distribution be placed in escrow. Unlike a typical equitable distribution award, Wife's payments were received monthly, and could only be placed into the escrow account monthly. Pursuant to the Order, that escrow was then to be maintained "pending further agreement of the parties or Order of Court." When the parties were apparently unable to reach a further agreement, Wife returned to Court.

A. Modification of my October 21, 2015 Order

In its first matter complained of, BGMS argues that I erred by "modifying the terms" of my October 21, 2015 Order. The Order, itself, provided for subsequent modification, either by agreement of the parties or by further Court Order. My January 22, 2016 Order, filed in response to Wife's Motion to Establish a Payment Plan, did not modify the October 21, 2015 Order at all; it was contemplated by it.

In her Response to BGMS's Motion for Reconsideration and at argument thereon, Wife demonstrated that BGMS was not willing to negotiate at all toward an agreement. Essentially, BGMS demanded that the funds be held in escrow for the two years it would take for the full balance to be reached.

Based on the facts of the case, I found this result would be inequitable. Had BGMS been able to secure a lump sum payment for Wife to which they could have looked for their fees, paying them in full prior to Wife receiving the remainder of the fund would have been appropriate. Instead, BGMS

5

6a

miscalculated the outcome of the underlying case and allowed Wife's fees to balloon to an unreasonable level rather than demand contemporaneous payment. I found BGMS entitled to their fees, but not entitled to impoverish their former client.

## B. Interference with Contractual Obligations

BGMS next argues that I erred and abused my discretion by acting "outside of {my} authority and interfering with contractual obligations entered into by BGMS and their prior client."

The fee agreement between BGMS and Wife provided at Paragraph 6: "By signing this retainer agreement, you agree that any check for final payment of settlement of your case shall be made out to {BGMS}. You also hereby agree that any outstanding fees ... with our firm may be taken directly out of the final settlement of your case prior to the remaining funds being released to you." My Order does not modify or reduce the amount which Wife owes to BGMS, nor alter her obligation to her former firm. It provides only that BGMS be paid over time, as is Wife.

Under Pennsylvania law, the Court must construe a contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Trumpp v. Trumpp*, *505 A.2d 601, 603 (Pa. Super. 1985)*; *McMahon v. McMahon*, *612 A.2d 1360, 1364 (Pa. Super. 1992)*. Accordingly, it would appear, at first review, that my Order modified the meaning of the party's contract by not requiring the monthly payments be escrowed for two years and paid out to BGMS prior to Wife receiving the remaining funds of her equitable distribution award.

Contracts, however, are also to be interpreted by ascertaining the intention of the parties. "Contracts must receive a reasonable interpretation, according to the intention of the parties ... the court may take into consideration the surrounding circumstances, the situation of the parties, the

6

objects they apparently have in view, and the nature of the subject-matter of the agreement." *Silverstein v Hornick*, *103 A.2d 734 (Pa. 1953)*.

The court is to give effect to those intentions of the parties if the same can be done consistently with legal principles. I sit as a court of equity and BGMS has asked me to exercise my equitable powers to assist them in collecting their fees. In this case, I found it was inequitable to impoverish Wife when the intention of the parties and the object they had in view when contracting – that BGMS receive all of its fees – can still be met without substantially prejudicing BGMS or by placing Wife in what would be a precarious financial position.

The Master found, and I agreed, that Wife was in need of transitional alimony in addition to her equitable distribution award. To limit Wife to receipt of only the $1,200.00 in alimony on which to live for time it would take to satisfy BGMS's lien would be unconscionable under the circumstances.

Pennsylvania follows the Restatement (Second) of Contracts. Section 261 of Chapter 11 of the Restatement reads: "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." Under this standard, a party's performance under a contract need not be strictly impossible, simply impracticable.

I found establishing a payment plan to be necessary due to impossibility of performance on Wife's part as originally contemplated by the parties. Wife did not receive a "final settlement" as anticipated, but a final payment plan. When Wife retained BGMS to represent her and when BGMS agreed to forgo ongoing payment of its fees during that representation, both parties anticipated a "fund" from which those accumulating fees would be paid. This basic assumption on which the contract was made and on which the

7

parties relied did not come about. Strict performance under the contract, therefore, became impracticable. BGMS can only look to the fund it helped create and that fund is being created over time.

In this case, I took each of these aspects into consideration in setting up an appropriate, equitable, and reasonable payment plan.

C. Failure to Follow Law Regarding Charging Liens

BGMS next claims that I failed "to follow established Pennsylvania law relating to attorney charging liens." The right of an attorney to a priority charging lien has long been recognized and enforced in Pennsylvania. *See,* **Smyth v. Fid. & Deposit Co. of Maryland**, *190 A. 398, 402, opinion adopted, 192 A. 640 (Pa. 1937).*

Attorney charging liens have long been issued by the courts of Pennsylvania to protect attorneys. As the Pennsylvania Supreme Court stated in **Harris's Appeal**, *323 Pa. 124, 130-131 (Pa.1936):*

> "The charging lien, originally, was defined to be the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected. Unlike the retaining lien, the charging lien does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, *ex oequo et bono,* [*according to the right and good*] that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry those fruits were obtained."

My Order does nothing which jeopardizes BGMS from being paid for its industry. Wife cannot "run away with the fruits of the cause" as she is not receiving them all at once and BGMS's payments are sent to it directly.

Under Pennsylvania law, an attorney's equitable charging lien is superior to that of other creditors. My Order does nothing to disturb the priority of BGMS's lien. The issuing of the lien and the requirement that the funds be paid

8

to BGMS directly prevent any of Wife's other creditors from depleting the fund. BGMS simply has to receive its fees in the same manner as Wife receives her award.

In this case, as a court sitting in equity, I had the responsibility both to protect BGMS's right to be paid for services provided and to effectuate economic justice between Husband and Wife, the litigants before me. My decision was not based on partiality or malice, but was based on the factual circumstances of the case.

Escrowing all of the funds received by Wife would satisfy the lien in a bit over two years. Under the payment plan established, it will take 3.7 years. Without the established payment plan, Wife would not have adequate income to support herself for two years, negating the purpose of her alimony award. Balancing all of the issues before me, a payment plan was the most just and equitable alternative.

## D. Modification of Fee Agreement

Lastly, BGMS argues that I acted outside of my authority and abused my discretion by "entering an Order of Court essentially modifying the terms of a fee agreement between BGMS and their former client." This argument is basically identical to its second argument at (b). As noted above, my Order did not modify the most essential elements of the fee Agreement – namely, that BGMS be paid for its efforts in achieving an award for Wife.

BGMS's Agreement states at Paragraph 4: "This office expects you to keep your account current by paying in full all balances due by the date specified on your monthly invoice.' Notwithstanding this expectation, BGMS allowed Wife's outstanding bill to grow to over $63,000.00.

The practice of law is a learned profession which is regulated by the Pennsylvania Rules of Professional Conduct. These rules present ethical and contractual issues for the lawyer and client that do not exist between people

9

engaged in ordinary sales or service businesses. Hence, the attorney-client relationship is treated differently by the Courts than the relationship between, for instance, a property owner and a construction contractor. Business dealings by lawyers with their clients must be "fair and reasonable to the client" pursuant to Rule of Professional Conduct 1.8(a.)(1.).

In this case, I found that BGMS was not being fair and reasonable when it flatly refused to accept any sort of payment plan proposed in good faith by Wife. The predicament in which BGMS finds itself was, to a great degree, of its own making. First, it allowed Wife's balance to grow without demanding payment when due and second, it miscalculated the likelihood of a single fund being created sufficient to pay off the balance. I found that, under those circumstances, since Wife was receiving her award over time, it was only fair, equitable, and reasonable to allow Wife time to satisfy her obligation to BGMS.

## Conclusion

Because my February 2, 2016 Order was reasonably fashioned to protect all BGMS and Wife, and is consistent with the laws of this Commonwealth, it should be affirmed.

BY THE COURT:

_____ J.

10

11a